# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>JOHN CHARLES MCPHERSON, II,<br><br>Defendant. | No. CR16-4095-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I.    INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed on September 19, 2017, by the Honorable Kelly K.E. Mahoney, United States Magistrate Judge. *See* Doc. No. 57. Judge Mahoney recommends that I grant defendant's motion (Doc. No. 42) to suppress statements he made during a custodial interrogation in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) . Neither party has filed objections. The time to make such objections has expired.

## II.    BACKGROUND

### A.    *Procedural History*

McPherson is charged with possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He filed his motion (Doc. No. 42) to suppress on July 28, 2017. The Government filed a resistance (Doc. No. 45) on August 11, 2017. Defendant filed a reply (Doc. No. 52) on August 18, 2017 and the Government filed a second response (Doc. No. 53) on August 23, 2017. Judge Mahoney held a hearing on August 30, 2017. The following exhibits were admitted into evidence:

- Government Exhibit 1 – Video of the interview room at the Sergeant Bluff Police Department
- Government Exhibit 2 – Video of the booking room at the Woodbury County Jail
- Government Exhibit 3 – A Toxicology Report from DCI Crime Lab (Doc. No. 46)
- Defense Exhibit A – A Sergeant Bluff Police Report (Doc. No. 42-2)
- Defense Exhibit B – Video from an Officer's Body Cam (Doc. No. 42-3)
- Defense Exhibit C – Audio recording of McPherson's interview at the Woodbury County Jail (Doc. No. 42-4)
- Defense Exhibit D – Transcript of McPherson's interview at the Woodbury County Jail (Doc. No. 42-5)

### B.   *Relevant Facts*

Judge Mahoney provided the following background in her R&R:

> On the morning of October 20, 2016, McPherson was approached while apparently sleeping inside a vehicle.[1]  Def. Ex. B, 02:00.  During the encounter, an officer shot at (and missed) McPherson and thereafter found a firearm in his waistband.  McPherson was taken to an interview room at the Sergeant Bluff, Iowa, police department by Woodbury County, Iowa, Sheriff's Deputy Todd Peterson.  Upon entering the interview room, McPherson told Deputy Peterson, "I want a lawyer first."  Govt. Ex. 1,

---

[1] The facts are taken from the testimony of the officers at the hearing and the admitted exhibits, particularly Government Exhibit 1, a video of the interview room at the Sergeant Bluff Police Department; Government Exhibit 2, a video of the booking room at the Woodbury County Jail; and Defendant Exhibits C and D, the audio recording and transcript of McPherson's interview at the Woodbury County Jail.  All times listed are approximate and come from the time stamp on the video (Government Exhibits 1 and 2) or the time on the media player (Defendant Exhibits B and C, which have no time stamps).

2

9:47:28. Deputy Peterson responded that they were only there to "get [McPherson] more comfortable so [he's] not smashed up in the back of th[e] car." A few minutes later, Deputy Peterson asked McPherson something further about his attorney, although it is unclear what prompted this question.[2] Govt. Ex. 1, 9:56:10. A few minutes after that, McPherson said that he was not going to answer any questions, and Deputy Peterson responded that he was not going to ask any. Govt. Ex. 1, 9:59:05. The pair then discussed whether Deputy Peterson should read McPherson his *Miranda* rights, including whether McPherson was detained or under arrest and whether the distinction mattered. When Deputy Peterson remarked that he did not want McPherson to say something he regretted, McPherson said that he was talking to a lawyer first. Govt. Ex. 1, 10:00:00. Shortly thereafter, McPherson began to sleep. Around thirty minutes later, another officer entered the room and during a brief conversation, Deputy Peterson told the other officer that McPherson had asked for a lawyer twice, that he had not advised him of his *Miranda* rights, and that they had not talked about anything other than passing the time. Govt. Ex. 1, 10:35:40-10:36:16.

After resting for an hour, McPherson was awakened a little before 11:00 a.m. by Special Agent Trevor Modlin of the Iowa Division of Criminal Investigation. McPherson seemed agitated: he bared his teeth at Agent Modlin when he touched his shoulder to wake him, said several times in a somewhat aggressive manner that he was not all right and that he needed his prescription medications, and stood up as if to challenge Agent Modlin at one point. Govt. Ex. 1 10:51:29-10:52:30. Agent Modlin stated several times that he wanted to talk to McPherson, and he read him his *Miranda* rights. Govt. Ex. 1 10:51:47, 10:52:11, 10:52:49, 10:53:46. McPherson responded, "Get the fuck out of here and get me a lawyer." Govt. Ex. 1, 10:54:40. Agent Modlin continued to ask McPherson if he would talk to him. Govt. Ex. 1, 10:54:55, 10:55:53, 10:56:13, 10:56:20. After answering a few biographical questions, McPherson stated that he needed a lawyer. Govt. Ex. 1, 10:58:00. Agent Modlin responded, "Here's the thing, we kind of need to figure out what happened." Govt. Ex. 1, 10:58:05. McPherson said that he was ready for a lawyer and that he needed medical attention for his Lou Gehrig's disease, since he had not taken his medications in six hours. Govt. Ex. 1, 10:59:18. Agent Modlin

---

[2] The video of McPherson in the interview room jumps throughout, cutting a few seconds to up to a minute at a time, including from 9:55:54-9:56:09, 9:59:18-9:59:32, 9:59:48-10:00:02, 10:01:13-10:01:42, and 10:36:53-12:37[:]14.

3

said that he would try to get McPherson his medications and left the room. Govt. Ex. 1, 11:00:00.

McPherson napped in the interview room while he waited for medical attention. Around 12:30 p.m., Special Agent Jacqueline Montagne of the Iowa Division of Criminal Investigation came into the interview room and asked McPherson, who was lying on the ground, "Rough day?" Govt. Ex. 1, 12:36:29. Agent Montagne, who was the case agent for the officer-involved shooting investigation, introduced herself as a law enforcement officer, and McPherson asked whether he was under arrest or being detained (at which point the video skips). Govt. Ex. 1, 12:36:53. When the video picks up again, Agent Montagne said, "I hear what you're saying." It then sounds like McPherson said something about a lawyer, and Agent Montagne responded, "I'm all ears." Govt. Ex. 1, 12:37:14. McPherson then asked if she is his lawyer, and she said that she was checking on him and that an ambulance was coming. Govt. Ex. 1, 12:37:25. There was additional brief conversation, during which McPherson said something about the officer shooting at him, and Agent Montagne told him he was lucky he didn't get shot. After she left the room, McPherson asked another agent who "that lady" was, and the agent explained that Agent Montagne was a police officer. Govt. Ex. 1, 12:40:07. McPherson commented that she seemed nice. Govt. Ex. 1, 12:40:13.

After being allowed to go to the restroom, accompanied by a special agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives, McPherson verbally threatened and made a gesture toward the agent. Govt. Ex. 1, 1:00:10. A scuffle ensued, during which an officer deployed a Taser on McPherson once, and officers subdued him on the ground. Govt. Ex. 1, 1:01:00. An ambulance crew arrived shortly thereafter, and McPherson went to the hospital around 1:00 p.m., accompanied by Sergeant Bluff Police Chief Scott Pack. While at the hospital, a urine sample was taken from McPherson pursuant to a state-court search warrant at the direction of Agent Modlin, who went to the hospital after obtaining the search warrant. Analysis of the urine sample later revealed the presence of benzodiazepines, amphetamines, and THC. *See* Govt. Ex. 3.

After being released from the hospital, McPherson was taken to the Woodbury County Jail around 6:00 p.m. After McPherson had completed the booking process with a Woodbury County correctional officer, Agent

Modlin fingerprinted McPherson pursuant to the search warrant, which authorized the collection of "major case prints." Around 7:20 p.m., while Agent Modlin was still taking fingerprints, Agent Montagne came to the doorway of the booking room. She said, "Hi John, remember me?" Govt. Ex. 1, 19:20:20. McPherson asked if she remembered him, to which she responded yes, from him lying on the floor. Govt. Ex. 2, 19:20:34. McPherson asked, "Where? At my house?" Govt. Ex. 2, 19:20:40. McPherson then said he needed a thousand dollars from the bank and needed Agent Montag[n]e to retrieve his debit card from his personal effects and use it to obtain the money he needed to post bond. Govt. Ex. 2, 19:20:50. Agent Montagne responded that he had her confused with somebody else. Govt. Ex. 2, 19:21:12. McPherson then said that he had seen Agent Montagne on Facebook, after which Agent Modlin said (as a joke, according to his testimony, as Agent Montagne does not use Facebook) that Agent Montagne was "a big Facebooker." Govt. Ex. 2, 19:21:15. Laughing, Agent Montagne agreed. McPherson asked why she had not gone on a motorcycle ride with him. Govt. Ex. 2, 19:21:31. Agent Montagne responded that she was too scared. Govt. Ex. 2, 19:21:34. McPherson again asked Agent Montagne about his debit card and posting bond, and she walked closer to him. Govt. Ex. 2, 19:21:57. He said that he wanted to talk, and Agent Montagne said that she would love to hear his side of the story. McPherson again said that he wanted to talk, and Agent Montagne said that she would get an interview room.

Once Modlin's fingerprinting process was complete, McPherson was given food and taken to an interview room with Agent Montagne and Chief Pack. *See* Def. Ex. D. Throughout the interview, McPherson referred to Agent Montagne as "Jackie" (her first name)[3] and Chief Pack as "Brad" (his first name is Scott). At the beginning of the interview, McPherson stated that he had "blacked out" earlier at the police department from post-traumatic stress disorder. Agent Montagne asked McPherson how he had been, and he expounded on some recent troubles. Agent Montagne then asked about his parents. After responding to her questions, McPherson asked why she was "doing a biography about [him]." McPherson told Agent Montagne that she had been to his house (which she denied) and that

---

[3] Near the end of the interview, McPherson asked how he knew Agent Montagne's name when she walked into the booking room, and when Agent Montagne explained that he had met her earlier in the day, McPherson acted as if he had not remembered, stating that he had believed she was "Jackie Johnson," a woman from his past whom he had known a long time ago. Def. Ex. C 1:10:20-1:11:20.

5

they were Facebook friends (which she did not deny). He asked whether Agent Montagne and Chief Pack were romantically involved, and Chief Pack said they were not. McPherson asked again about his debit card and obtaining money for bond, and Chief Pack said they would get it figured out "[o]nce we get done with this." McPherson then asked whether he would be made a confidential informant. When this was denied, he asked, "What are you guys trying to do? . . . What's going on?" Agent Montagne said that they "just want[ed] to get your side of the story about what happened today." McPherson proceeded to talk about the events of the day and to make other incriminating statements. At no point did Agent Montagne and Chief Pack readvise McPherson of his *Miranda* rights or mention McPherson's right to counsel in any way. Neither did they reintroduce themselves as police officers, nor clarify the purpose of the interview.

*See* Doc. No. 57 at 1-6 (footnotes in original).

## II.    APPLICABLE STANDARDS

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error").

6

As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III.   THE R&R

Judge Mahoney began her analysis with an overview of *Miranda* rights. She noted that once an accused invokes his right to an attorney, the interrogation "must cease until an attorney is present." Doc. No. 57 at 6 (quoting *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010)). He or she is not subject to further interrogation until counsel is made available "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 7 (quoting *Edwards v. Arizona*, 451 U.S. 477, 484 (1981)). Initiation of a conversation by an accused does not automatically result in a *Miranda* waiver, however. Rather, they are two separate inquiries. *See id.* (citing *Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983) (plurality opinion)). Moreover, the law requires that the defendant's statement "evince a willingness and a desire for a generalized discussion about the investigation." *Id.* at 8 (citing *Lamp v. Farrier*, 763 F.2d 994, 997 & n.6 (8th Cir. 1985)). A communication initiated by the accused must relate to the investigation in order to satisfy *Edwards*. *Id.* (citing *United States v. Valdez*, 146 F.3d 547, 551 (8th Cir. 1998)). Here, the parties agree that McPherson invoked his

7

right to counsel and that his interview at the Woodbury County Jail constituted a custodial interrogation. *Id*. They dispute whether McPherson initiated the conversation and validly waived his *Miranda* rights.

With regard to who initiated the conversation, Judge Mahoney first considered whether Montagne did so by asking: "Remember me?" Judge Mahoney concluded that she did, for several following reasons. First, the Eighth Circuit has held that an officer does not initiate further communication under *Edwards* by asking the defendant whether he had been able to reach his wife on the telephone the night before,[4] by informing the defendant of the results of a lineup identification,[5] by telling the defendant a search warrant had been obtained[6] or by showing the defendant bags of cocaine during the execution of a search warrant and asking what was in them.[7] *Id*. at 9. With regard to Montagne, however, Judge Mahoney noted there appeared to be no reason for her to be in the booking room other than to check on McPherson. She noted that in cases in which officers visited defendants in jail without being summoned by the defendants, the officers are typically found to have initiated further communication. *Id*. at 10. Here, McPherson was in a booking room with other officers, not a jail cell, and would occasionally speak to those officers. Montagne's visit to the booking room, therefore, was noteworthy, but not directly on point.

Judge Mahoney then reasoned that the entirety of Montagne's interaction with McPherson, and all of the officers' statements to McPherson throughout the day, suggested that McPherson did not initiate further communication. McPherson had

---

[4] Doc. No. 57 at 9 (citing *United States v. Barbarena-Jimenez*, No. 95-3202, 1996 WL 83002, at *4 (8th Cir. 1996) (per curiam)).

[5] *Id*. (citing *United States v. Allen*, 247 F.3d 741, 765-66 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002)).

[6] *Id*. (citing *United States v. Hull*, 419 F.3d 762, 765-67 (8th Cir. 2005)).

[7] *Id*. (citing *United States v. Sanko*, 787 F.2d 1249, 1250-51 (8th Cir. 1986)).

8

immediately invoked his right to counsel while he was in the interview room at the Sergeant Bluff Police Department. However, Modlin proceeded to read McPherson his *Miranda* rights and attempted to question him. When Montagne came into the room around 12:30 p.m., when McPherson was lying on the floor waiting to be taken to the hospital, her question "[r]ough day?" could have elicited a response about the events she was investigating. Doc. No. 57 at 11. Judge Mahoney concluded that these facts put Montagne's question "Remember me?" in a new light given that the purpose of the *Edwards* rule is to ensure police do not "repeatedly attempt[ ] to question a suspect . . . until . . . 'badgered into submission.'" *Id.* (citing *Shatzer*, 559 U.S. at 105). In other words, while Montagne's question may have been innocent, it prompted McPherson to talk; it was not on his own initiative. *Id.*

Finally, Judge Mahoney explained that even if Montagne's question "Remember me?" did not initiate the communication, McPherson himself did not initiate communication about the investigation in the booking room or interview room. *Id.* In the booking room, McPherson stated that he wanted to talk only after Montagne began the conversation. *Id.* at 12. Even when McPherson did engage in conversation, it centered around his debit card, seeing Montagne on Facebook and her refusal to go on a motorcycle ride with him. *Id.* Judge Mahoney concluded that McPherson did not "evince a willingness and a desire" to discuss the investigation while in the booking room. *Id.* In the interview room, McPherson again focused on seeing Montagne on Facebook and accessing his debit card. He also wanted to know if she and Pack were dating. *Id.* He did not start speaking about the investigation until Montagne said they wanted to get his side of the story about what happened. *Id.* Having considered all of this evidence, Judge Mahoney found that Montagne, not McPherson, initiated the communication related to the investigation. *Id.* at 13. Therefore, she found that the interrogation violated McPherson's Fifth Amendment rights under *Edwards* and recommends that his statements be suppressed. *Id.*

9

Even though Judge Mahoney concluded that McPherson did not initiate the conversation concerning the investigation, she went on to consider whether, in any event, he validly waived his *Miranda* rights. *Id*. She noted that a valid *Miranda* waiver must be knowing, intelligent and voluntary. *Id*. (citing *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011)). The Government must prove waiver by a preponderance of the evidence. *Id*. at 13-14.

Judge Mahoney pointed out that when Montagne and Pack interrogated McPherson a little before 8:00 p.m., they did not reread him is *Miranda* rights. *Id*. at 14. These rights had previously been read to him by Modlin approximately nine hours earlier, when McPherson repeatedly invoked his right to counsel while Modlin continued trying to talk to him. *Id*. Montagne and Pack also did not reintroduce themselves as police officers, even though it was questionable whether McPherson remembered the events from the police station earlier that day. McPherson did appear to recognize they were law enforcement officers, because he asked if they wanted him to be a confidential informant. *Id*. However, the officers did not mention McPherson's previous invocation of his right to counsel or clarify whether he wished to proceed without counsel. *Id*.

Judge Mahoney concluded that the Government has not proved that McPherson's waiver of his previously-invoked right to counsel was knowing and intelligent. She reasoned that a considerable amount of time had passed between McPherson being advised of his *Miranda* rights and the reinitiated conversation. Judge Mahoney noted that courts have found waiver in this situation if the officers readvised the defendant of his or her *Miranda* rights or reminded the defendant of his or her previous request for counsel. *Id*. at 15.

Judge Mahoney then addressed the Government's argument that McPherson had demonstrated apparent knowledge of his *Miranda* rights. McPherson had referred to those rights by name and debated whether they should be read to him when he spoke with Peterson. McPherson suggested *Miranda* applied only if he was under arrest and seemed

10

concerned throughout the day whether he was under arrest or merely being detained. *Id*. Judge Mahoney noted that while this factor was relevant, it did not demonstrate that McPherson understood his rights at the time of the interrogation by Montagne and Pack. She found the fact that the officers did not "scrupulously honor[ ] . . . [McPherson's] invocation of the right to counsel by not interrogating him after he invoked [this] right[ ]" to tip the balance against a finding of waiver. *Id*. at 15-16. She explained that some of McPherson's understanding of his *Miranda* rights may have been hindered by Modlin repeatedly asking him to talk despite his request for an attorney. *Id*. at 16. Moreover, the advisement of his *Miranda* rights eight or nine hours earlier, when McPherson had invoked his right to counsel and had that right violated, did not demonstrate sufficient knowledge and waiver of his *Miranda* rights during the interrogation with Montagne and Pack. *Id*. Thus, Judge Mahoney recommends that McPherson's statements be suppressed from the prosecution's case-in-chief, even if I find that McPherson initiated further communication.

In sum, Judge Mahoney recommends that I grant McPherson's motion to suppress because he did not initiate the communication regarding the investigation after invoking his right to counsel. In the alternative, she recommends that I grant his motion to suppress because McPherson's waiver of *Miranda* rights was not knowing and intelligent.

## IV. DISCUSSION

As noted above, the parties did not object to the R&R. Therefore, I have reviewed it for clear error. Judge Mahoney applied the appropriate legal standards in considering whether McPherson initiated communications about the investigation following his invocation of his right to counsel and whether he validly waived his *Miranda* rights when he was interrogated by Montagne and Pack. I agree with Judge Mahoney that based on the totality of the circumstances it was Montagne, not McPherson, who reinitiated the conversation. I further agree that, in any event, McPherson did not validly waive his

11

previously-invoked *Miranda* rights at the time he was interrogated by Montagne and Pack. I find no error in Judge Mahoney's recommendation. As such, I adopt the R&R in its entirety.

## V. CONCLUSION

For the reasons set forth herein:

1. I **accept** United States Magistrate Judge Mahoney's September 19, 2017, report and recommendation (Doc. No. 57) without modification. *See* 28 U.S.C. § 636(b)(1).
2. Pursuant to Judge Mahoney's recommendation, defendant's motion (Doc. No. 42) to suppress his statements is **granted**.
3. The Government is prohibited from using McPherson's statements from the interrogation by Montagne and Pack as substantive evidence in its case-in-chief.

**IT IS SO ORDERED.**

**DATED** this 23rd day of October, 2017.

_____
Leonard T. Strand, Chief Judge